IN THE UNITED STATED DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY and RUSK CAPITAL MANAGEMENT, L.L.C., | § § § § | |
| v. | § § | CIVIL ACTION NO. 4:16-CV-02731 |
| MAROPCO, INC.; E. PIERCE MARSHALL, JR.; EDWIN K. HUNTER; HUNTER, HUNTER & SONNIER, LLC; & TROF, INC. | § § § § | |

## PLAINTIFFS' EXPEDITED MOTION FOR REMAND[1]

Plaintiffs, Preston Marshall ("Preston") and Rusk Capital Management, LLC ("RCM") file this Expedited Motion for Remand requesting the Court remand this lawsuit to state court.

## I.      INTRODUCTION

1.      This is a complex case involving novel questions of state law, ethics, jurisdiction, and discovery. It has been on file in the 11th Judicial District Court of Harris County, Texas, Hon. Michael Miller presiding. Over one million documents have been produced by the parties and a special master was appointed to assist with discovery. Defendant MarOpCo, Inc. ("MarOpCo") filed three Petitions for Writ of Mandamus and three Emergency Motions for Stay and all have been denied. In addition, there are two Special Appearances, an interlocutory appeal, and request for stay currently pending.

2.      Trial is scheduled for November 7, 2016. On August 12, 2016, MarOpCo sought to continue the trial date. Recognizing Defendants' delay tactics, Judge Miller declined to continue the trial date. On August 12, 2016, Plaintiffs amended the petition to assert a federal claim that is a mirror image of one of MarOpCo's counterclaims filed over 10 months ago.[2] MarOpCo did not remove at that point. Instead, they pressed their continuance, which Judge

---

[1] Plaintiffs seek expedited oral hearing of this Motion through a Motion for Expedited Consideration filed separately with the clerk.
[2] Contemporaneous with the filing of this Expedited Motion, Plaintiffs are filing a Motion for Leave to Amend and dismiss their sole federal claim.

Miller heard and declined to grant on August 22, 2016. On September 9, 2016, MarOpCo removed the state court case to this federal court. Thus, Defendants waited until *after* Judge Miller declined to grant their Motion for Continuance—the hearing on which occurred well after Plaintiffs filed their petition alleging a federal cause of action—to file this Notice of Removal.

3.      This is a predominately state law case, the state district and appellate courts are intimately familiar with it, and Plaintiffs have sought leave to amend to omit the sole federal claim. Plaintiffs request the Court remand the case for state court adjudication, keeping in mind the Fifth Circuit charge that all doubts regarding removal should be resolved in favor of remand.[3]

## II.      RELEVANT FACTUAL BACKGROUND

### A.      The Hunter Parties and Pierce, Jr. Defraud Preston.

4.      On December 5, 2014, MarOpCo and the Hunter Parties[4] falsely represented to Preston, to induce him to sign an Employment Agreement, that "[w]e are taking steps to place you and Pierce, Jr. in possession of the Ribosome [sic] units disclaimed by your mother."[5] On December 12, 2014, Preston signed the Employment Agreement with MarOpCo.

5.      As further fraudulent inducement tied directly to Preston's 2014 employment contract, the Hunter Parties represented to Preston:

> Her [Elaine Marshall's] ultimate compensation decision will not likely trouble your client as Mrs. Marshall intends to distribute from her late husband's estate 12,811 Trof non-voting shares... Your client's share of future income on the distributed shares will eclipse his current MarOpCo, Inc. compensation.[6]

6.      The Employment Agreement greatly reduced Preston's salary. Yet, the promised shares were not distributed to Preston. The shares and dividends are worth over $400,000,000.

7.      Contrary to these representations to Preston—and without notice or disclosure to Preston—E. Pierce Marshall, Jr. ("Pierce, Jr.") convinced Elaine Marshall ("Elaine"), as two of

---

[3] *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).
[4] The "Hunter Parties" shall mean Edwin K. Hunter ("Edwin") and Hunter, Hunter & Sonnier, LLC ("HHS").
[5] **Ex. 1**.
[6] **Ex. 2**.

three trustees of the Trof Shareholding Trust, to distribute and transfer the 12,811 of Trof shares to the EPM Marital Trust on July 14, 2014.  Notably, on the same date, Pierce, Jr. and Elaine began secretly transferring all of the Trof shares to Wyoming trusts under the sole management and succession of Elaine and Pierce, Jr., contrary to the provisions of Articles III and IX of E. Pierce Marshall, Sr.'s Will.

8.      Thus, as of July 14, 2014, Elaine completed the transfer of 91,161 of the Trof Shares to the Marital Trust.  Elaine admitted that her decision to re-situs the EPM Marital Income Trust to Wyoming and name Pierce, Jr. as the successor trustee was because of advice and information she received from the Hunter Parties and Pierce, Jr.[7]

9.      By doing so, the groundwork was laid for the transfer of all Trof Shares to Wyoming, under Wyoming law, with Pierce, Jr., as newly named successor trustee – all in direct contravention of the Will, the Hunter Parties prior representations to Preston, and representations contained in a Disclaimer relating to the Trof shares.

### 1.      The Creation of RCM.

10.      Idzig, LLC owns the vast majority of the Marshall's oil and gas assets. Acting on the Hunter Parties advice, Preston created RCM to purchase Idzig.[8] MarOpCo alleges that RCM is MarOpCo's competitor.[9] This argument ignores two facts: (1) MarOpCo is an administrative services company and RCM is an oil and gas investment company; and (2) the Hunter Parties and MarOpCo encouraged RCM's formation, allegedly for Preston's and Elaine's benefit.

### 2.      Preston's Termination.

11.      Preston is a council member of Chondriosome Stiftung ("Chondriosome"). Money belonging to Chondriosome is currently in Ribosome, LP's account by agreement. Preston had access to Ribosome's account. MarOpCo demanded Preston transfer

---

[7] **Ex. 3**, Excerpts of E. Marshall Deposition, 61:25-63:2.
[8] **Ex. 4**, Excerpts of Edwin K. Hunter Volume 2 Deposition, 53:5-12.
[9] **Ex. 5**, ¶ 3, 17(i), 18, 22(f), 27, 31.

Chondriosome's money to a different bank account. Neither Preston nor Chondriosome's other fiduciary, Pierce, Jr., would have access to Chondriosome's money once it was moved to a new account. Preston informed MarOpCo that he could not consent or participate in transferring the money away from Chondriosome's control because of his fiduciary duties to Chondriosome.

12.      On June 11, 2015, Preston was notified in writing by MarOpCo that his employment with MarOpCo and Trof was terminated effective immediately because he failed to execute documents as instructed, namely the transfer of Chondriosome's funds to a new account.[10] MarOpCo advised that Preston would be rehired if he would agree to transfer the money that belonged to Chondriosome to the new account. MarOpCo also informed Preston he no longer had access to MarOpCo's Houston office ("Tidwell Office").[11]

### 3.      After Termination, Defendants Confiscated and Accessed Plaintiffs' Computers

13.      RCM shared the Tidwell Office with MarOpCo. Plaintiffs spent over $14,000.00 on computer equipment for RCM including a server ("Rusk Server").[12] After Preston's termination, Defendants possessed and wrongfully controlled the computers, RCM's Server, files (both physical and electronic), office equipment and furniture, as well as all privileged, confidential and/or proprietary information belonging to RCM or Preston. This included all records, files, and data used and relied upon by Preston to carry out his personal affairs and to meet his fiduciary obligations with respect to the Marshall Family Entities.

14.      Preston and RCM demanded the immediate return of all property and assets belonging or pertaining to Preston and RCM.[13] MarOpCo failed to return the property.

15.      On June 30, 2015, counsel for Plaintiffs contacted counsel for MarOpCo and informed them that Pierce, Jr., MarOpCo's General Counsel and Vice President, and Preston

---

[10] **Ex. 6**.
[11] *Id.*
[12] **Ex. 7** at p. 8.
[13] **Ex. 8**.

were adverse to one another in multiple lawsuits. Counsel for Plaintiffs noted that Pierce, Jr. should not use MarOpCo's access to Preston's computers as an opportunity to engage in improper discovery of Preston's information.[14] Counsel for MarOpCo responded that Pierce, Jr. is an attorney and would not engage in inappropriate discovery.[15]

16.     However, Pierce, Jr., and the Hunter Parties disregarded these representations. Instead, they participated in discovery of Plaintiffs' privileged information. The Hunter Parties conspired to convert, and took possession of images from Plaintiffs' computers, and transferred the images, including privileged attorney-client emails, to an external hard drive. Pierce, Jr. and the Hunter Parties filed the privileged emails in litigation in Louisiana against Preston.[16]

## III.     PROCEDURAL HISTORY

### A.     The Parties Agree to Provide Certain Computer Equipment to CyberEvidence.

17.     Plaintiffs initiated litigation on June 23, 2015, and sought a temporary restraining order. After a hearing, the Ancillary Judge issued a Temporary Restraining Order ("TRO").[17] The parties subsequently filed an Agreed Order for treatment of the property contained at the Tidwell office during Preston's employment.[18] Plaintiffs and MarOpCo agreed to engage CyberEvidence to assist with allocation of data on certain computer equipment.

18.     Despite having turned over certain computers and computer storage devices, MarOpCo retained forensic image(s) of the computers and computer storage devices MarOpCo made after terminating Preston and locking Plaintiffs out of the Tidwell Office. As discussed *supra*, Defendants searched the forensic image(s) and provided communications between Preston

---

[14] **Ex. 9**.
[15] **Ex. 10**.
[16] **Ex. 11, ¶** 8.
[17] **Ex. 12**.
[18] **Ex. 13**.

and his attorney in Louisiana to Pierce, Jr.[19] Pierce, Jr. then published some of those communications in the public record.[20]

**B.      The Court Appoints a Special Master.**

19.      To aid in determining who owned various pieces of data, Judge Miller appointed Mr. Craig Ball to serve as a Special Master.[21] Judge Miller issued an Amended Order Appointing Special Master on February 8, 2016, which specifically identified the Computer Equipment to be reviewed by the Special Master.[22] After several months, the parties and Special Master made little headway in determining ownership of electronic data.

20.      On multiple occasions, Judge Miller has pointed out that the data related to all of the Marshall Family Entities is inextricably intertwined, without a mechanism for determining who owns what. Both MarOpCo and Judge Miller have stressed that handling allocation of documents is a novel issue of Texas law. Judge Miller even remarked that "it just gets more complex and more difficult. We are testing more things. It has near infinite complexity I am afraid. It is so interwoven."[23] MarOpCo, in its third mandamus action, argued to the appellate court that this case presents unanswered questions of Texas law regarding ownership of electronic documents and the limitations for obtaining copies of them in discovery.[24]

**C.      There are Dozens of Issues Pending in this Case.**

21.      Plaintiffs have alleged 18 claims against Defendants. The sole claim that arises under or even relates to federal jurisdiction is the violation of the Computer Fraud and Abuse Act ("CFAA").[25] Contemporaneously with the filing of this motion, Plaintiffs seek leave to amend

---

[19] **Ex. 11**, ¶ 7-8.
[20] **Ex. 14**.
[21] **Ex. 15**.
[22] **Ex. 16**.
[23] **Ex. 17** at p. 30.
[24] **Ex. 18**.
[25] **Ex. 19**.

and drop the CFAA claim. MarOpCo has alleged 8 counterclaims.[26] MarOpCo asserted the CFAA claim against Plaintiffs on November 2, 2015, nearly one year before it removed the claim.[27] MarOpCo has raised 28 affirmative defenses.[28] Pierce, Jr. alleged 17 affirmative defenses.[29] HHS and Edwin alleged 34 affirmative defenses each.[30]

**D.     There Have Been Numerous Pre-Trial Hearings and Motions.**

22.     The Texas state courts have invested a *significant* amount of time in this dispute already. The trial docket sheet of this one year-old case is over *35 pages long*.[31] Given the scope and complexity of the issues present, Judge Miller regularly granted the parties special dockets on which there were no other cases pending. In fact, there have been at least 18 oral hearings involving numerous motions.[32] For instance, on June 8, 2016, Judge Miller heard and ruled on approximately eight different motions ranging from standard discovery motions to a motion to expedite the special master process by requesting the trial court make ownership determinations of categories of documents held at CyberEvidence (data amounting to tens of millions of pieces of data).[33] The June 8, 2016, hearing lasted from 9:00 a.m. until 4:15 p.m.

23.     Numerous motions were lengthy and required extensive preparation. By way of example, Plaintiffs' Motion to Compel heard on July 12, 2016, was nearly 50 pages long and attached many hundreds of pages of exhibits.[34] Additionally, there were multiple telephone hearings with and lengthy briefs drafted to the Special Master. MarOpCo's second brief to the Special Master was twenty-four pages long and contained 43 exhibits of hundreds of pages.

---

[26] **Ex. 5.**
[27] **Ex. 20.**
[28] **Ex. 21.**
[29] **Ex. 22.**
[30] **Ex. 23; Ex. 24.**
[31] **Ex. 25.**
[32] *Id.*
[33] **Ex. 26.**
[34] **Ex. 25** at pp. 23-24.

24.     In addition, MarOpCo filed three Petitions for Writ of Mandamus to the First Court of Appeals in Houston and three requests for emergency stay of the state court proceeding.[35] All six requests for relief were denied.[36]

25.     There is also an interlocutory appeal of the trial court's denial of the Hunter Parties' Special Appearances.[37] Defendant Trof recently filed a Special Appearance.[38]

**E.     There Has Been Extensive Pre-Trial Discovery.**

26.     In addition to the millions of documents produced in discovery, the parties have conducted eleven depositions and exchanged interrogatories and request for admission.[39] Also, the parties were scheduling additional depositions when MarOpCo removed.[40]

**F.     Expert Discovery is Extensive.**

27.     Plaintiffs are suing Pierce, Jr. and the Hunter Parties for violating their fiduciary duties to Preston. The Hunter Parties have represented the Marshall family, including Preston, for decades. When the Hunter Parties conspired to defraud Preston, they breached their fiduciary duties to Preston. Robert Schuwerk is serving as Plaintiffs' expert on attorney duties.[41]

28.     Plaintiffs also have experts on damages that valued the Trof shares. Plaintiffs experts valued the amount of dividends Preston should have already received and the shares. Given the value of the Trof shares is based upon Trof's extensive holdings of shares of Koch Industries and Koch Holdings, private companies, the valuations required extensive work.[42]

29.     Plaintiffs also designated experts on the value of Idzig. Idzig's value is based not only on its oil and gas assets, but the costs associated with those assets, such as costs to cap or shut-in wells and competing methods used to calculate those costs.

---

[35] The record on MarOpCo's third mandamus was over 2,000 pages long. **Ex. 27**; **Ex. 28**; **Ex. 29**; **Ex. 30**.
[36] **Exs. 31, 32, 33, and 34**.
[37] **Ex. 35**.
[38] **Ex. 36**.
[39] **Ex. 37**.
[40] **Ex. 38**.
[41] **Ex. 39**.
[42] *Id.*

# IV.   ARGUMENT AND AUTHORITIES

## A.   Defendants Did Not Properly Consent to Removal, Requiring Remand.

30.   A plaintiff has the right to seek remand for any procedural defect in the notice of removal.[43] The removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[44]

31.   The "rule of unanimity" requires that all defendants must join in seeking removal[45] or it is defective and the case must be remanded.[46] Additionally, Fifth Circuit jurisprudence holds that a defendant must actually *join* in the removal petition, as opposed to simply consenting to federal jurisdiction.[47] The joinder and consent must be *unambiguous*.[48] When a party fails to properly consent to removal, "[d]istrict courts have no power to overlook procedural errors relating to the notice of removal; instead, a district court must remand a case which was removed pursuant to a procedurally defective notice."[49]

32.   The Hunter Parties' failed to properly join the removal petition and also failed to properly consent to federal jurisdiction. In their consent to the removal, the Hunter Parties expressly reserved their rights to pursue state law relief.[50]

33.   The Hunter Parties' filed a Consent to Removal that states:

> "**Subject to their pending appeal** on the denial of their special appearances and **subject to the stay of all pretrial proceedings**, including discovery, as to Edwin K. Hunter and Hunter, Hunter & Sonnier, LLC pending resolution on appeal, Defendants Edwin K. Hunter and Hunter, Hunter & Sonnier, LLC consent to removal of this action…"[51] (emphasis added).

---

[43] 28 U.S.C.A. § 1447; *Snakepit Auto., Inc. v. Superperformance Intern., LLC*, 489 F. Supp. 2d 196, 201 (E.D.N.Y. 2007).

[44] *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).

[45] *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 (5th Cir. 1988).

[46] *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 667 (E.D. Tex. 1999); *Snakepit Auto*, 489 F. Supp. 2d at 201; *Creekmore v. Food Lion, Inc.*, 797 F. Supp. 505, 508 (E.D. Va. 1992).

[47] *Owens-Corning*, 48 F. Supp. 2d at 667 and 669; *see also Getty Oil Corp.*, 841 F.2d at 1262; *Henry v. Indep. Am. Savs. Assoc.*, 857 F.2d 995, 999 (5th Cir.1988).

[48] *Creekmore*, 797 F. Supp. at 508; *Spillers v. Tillman*, 959 F. Supp. 364, 369 (S.D. Miss. 1997).

[49] *Spoon v. Fannin Cnty. Cmty. Supervision & Corr. Dept.*, 794 F. Supp. 2d 703, 705-06 (E.D. Tex. 2011).

[50] *See* Dkts. 2, 4, and 5.

[51] *Id.* (footnote omitted from quote).

34.     When there exists any doubt as to the right of removal, all ambiguities are construed against removal.[52] Here, the Hunter Parties expressly *withheld* their consent to federal jurisdiction regarding the appeal of their denied special appearances filed in state court. The Hunter Parties appeal of that denial is pending in state appellate court.[53] The Hunter Parties attempted to reserve state jurisdiction over their Special Appearance. This is the exact type of ambiguous consent all federal courts denounce as insufficient evidence of consent to removal.[54]

35.     MarOpCo may claim it informed the Court that all defendants consented to the removal. Such generalized consent is ineffective. First, each defendant must himself manifest his consent or joinder to the removal.[55] Second, MarOpCo did not allege that it had authority to speak on behalf of the other defendants.[56] Finally, MarOpCo did not allege the other defendants *joined* in the removal, as required by the Fifth Circuit.[57]

36.     The Hunter Parties will claim they were attempting to preserve their challenges to personal jurisdiction. However, there was no danger of consenting to personal jurisdiction by removal because removal is not a consent to personal jurisdiction.[58] Joining in the removal would only shift to having the federal court decide that issue.

37.     The Hunter Parties' unambiguous consent and joinder was due within 30 days of receiving Plaintiffs' petition containing the CFAA claim.[59] The Hunter Parties received Plaintiffs' Sixth Amended Petition asserting that claim on August 12, 2016, more than 30 days ago. As such, the Hunter Parties are outside the statutory window for filing an unambiguous joinder or consent to federal jurisdiction, and this case must be remanded to state court.[60]

---

[52] *Samuel v. Langham*, 780 F. Supp. 424, 427 (N.D. Tex. 1992).
[53] **Ex. 35**; **Ex. 40**; **Ex. 41**.
[54] *Creekmore*, 797 F. Supp. at 508; *Spillers*, 959 F. Supp. at 369.
[55] *Creekmore*, 797 F. Supp. at 508; *Spillers*, 959 F. Supp. at 369.
[56] *Spoon*, 794 F. Supp. 2d at 709.
[57] *See* Dkt. 1.
[58] *Rivera v. Bally's Park Place, Inc.*, 798 F. Supp. 2d 611, 615 (E.D. Pa. 2011).
[59] 28 U.S.C.A. § 1446(2)(B).
[60] *Owens-Corning*, 48 F. Supp. 2d at 667

**B.      The Court Should Dismiss Plaintiffs' Sole Federal Claim.**

38.      The Fifth Circuit has evidenced a clear and consistent policy favoring allowing a party to dismiss a federal claim when the underlying dispute is predominately a state law matter.[61] Plaintiffs' hereby incorporate their Motion for Leave to Amend, filed on September 15, 2016, which addresses this topic in depth.

**C.      The Court Does Not Have Supplemental Jurisdiction Over the Majority of Claims.**

**1.      The State Claims and Federal Claim Arise From Different Actions.**

39.      When a claim over which a federal court has original jurisdiction is removed along with state law claims, a threshold question is whether the court has supplemental jurisdiction over the state law claims.[62] "[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III."[63]

40.      To determine whether the state law claims fall within the same case or controversy as the federal law claim, the state and federal claims must derive from a common nucleus of operative fact.[64] *Gibbs* clarifies this standard, holding if a plaintiff's claims "are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole."[65]

41.      This Court does not have supplemental jurisdiction over the majority of the state law claims. Most of Plaintiffs' claims relate to Defendants' wrongful termination, fraud, breaches of fiduciary duty, conspiracy to divest Preston of his interest in various Marshall Family Entities, and Preston's right to access Marshall Family Entities and their data. The sole federal claim relates to Defendants' improper access to Preston's computers and privileged data.

---

[61] *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 163 (5th Cir. 2011).
[62] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 721 (1966).
[63] 28 U.S.C.A. § 1367.
[64] *Gibbs*, 383 U.S. at 725.
[65] *Id.*

42.     Plaintiffs allege that Pierce, Jr. and the Hunter Parties engaged in a lengthy conspiracy to defraud Preston and strip him of his rights under Pierce, Sr.'s Will.[66] The conspiracy culminated in Preston's termination, Defendants secretly moving Trof shares to Wyoming, and improperly purporting to replace Preston as successor trustee of a key trust.

43.     However, even if the computer access claims "are such that he would ordinarily be expected to try them all in one judicial proceeding," there is a second step to the analysis. If the federal and state claims are of the type that one would expect to be brought together, one must still consider the *substantiality* of the federal claims.[67]  Federal courts do not gain power to hear the state claims unless the federal claims are substantial.[68]

44.     In this case, the wrongful access claim pales in comparison to the scope of the state law claims. The state law claims allege a wrongful termination and a conspiracy to hijack control of the Marshall Family Entities and defraud Preston of hundreds of millions of dollars in promised shares and dividends. The sole federal claim relates only to whether Defendants improperly logged on to Plaintiffs' computers, downloaded privileged information from them, and damaged Plaintiffs.

45.     Additionally, none of the state law claims turn on a federal issue.[69] To grant a federal court jurisdiction over the state law claims, the Court must determine that a state law claim necessarily raises a disputed and substantial "stated federal issue" that a federal forum may entertain "without disturbing any congressionally approved balance of federal and state judicial responsibilities."[70] This case fails every element of the *Grable* analysis above. The state law claims do not contain federal issues, much less disputed and substantial ones. Nor are issues of overriding federal importance present.

---

[66] **Exs. 42 and 43**.
[67] *Gibbs*, 383 U.S. at 725.
[68] *Id.*
[69] *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).
[70] *Id.*

46.     Although there are no federal issues in this case if leave is granted to amend the Complaint, there are important issues of state law. The state law claims raise issues that should be litigated and decided by Texas courts, including issues concerning the limits of attorney-client representation of Texas-licensed lawyers and the breadth of operations a business can perform in Texas without becoming subject to Texas' general or specific jurisdiction. Texas state courts have invested an enormous amount of resources into this case, and trial is set in less than 60 days. The concerns of federalism loom large in cases such as this one.

47.     Even assuming proper removal, which is absent here, *infra*, the Court simply would not have supplemental jurisdiction over the pending state law claims other than the CFAA claim, invasion of privacy claim, and violation of the Texas Harmful Access to Computer Act ("THACA").

48.     Alternatively, should the Court find jurisdiction over the CFAA and arguably related claims (THACA, invasion of privacy, and possibly conspiracy to invade), Plaintiffs request the Court sever all claims other than the CFAA claim, the violation of the THACA claim, and the invasion of privacy claim and remand all other causes of action to the 11th District Court in Harris County, Texas. Upon a finding that the Court does not have supplemental jurisdiction over certain state law claims, "the district court shall sever all [such] claims…and shall remand the severed claims to the State court from which the action was removed."[71]

**D.     In the Alternative, the Court Should Decline to Exercise Supplemental Jurisdiction.**

49.     The Court has discretion to remand a case based on four statutory factors. The Court may decline supplemental jurisdiction if: (a) the claim raises a novel or complex issue of State law; (b) the claim substantially predominates over the claims or claim over which the district court has original jurisdiction; (c) the district court has dismissed all claims over which it

---

[71] 28 U.S.C.A. §1441(c)(2).

has original jurisdiction; or (d) there are other compelling reasons for declining jurisdiction.[72]

Additionally, the district court should consider judicial economy, convenience, fairness, and comity in making a determination of whether to exercise supplemental jurisdiction.[73]

50.     No one factor is dispositive in conducting this determination.[74] "The overall balance of the statutory factors is important."[75] Plaintiffs will address the factors in order.

### 1.     This Dispute is Complex and Involves Multiple Novel Issues of State Law.

51.     As illustrated in the facts and procedural sections above, this dispute involves dozens of issues involving intricate corporate hierarchies and tax structures, novel questions of who owns corporate and personal electronic and physical data stored in Texas and shared among multiple family members, numerous questions regarding the extent to which entities may conduct operations in Texas but avoid Texas' jurisdiction, and the ethical and fiduciary extents to which a Texas attorney may work to injure a client.

52.     Stated in summary form, this case involves at least the following:

-   Three Petitions for Writ of Mandamus and three Emergency Motions for Stay (MarOpCo filed all six motions and all six were ultimately denied).

-   Two special appearances, one related interlocutory appeal, and one stay of discovery pending the resolution of said appeal.

-   Questions regarding whether the attorney-client privilege protects disclosure of communications to and from a Texas lawyer representing joint clients.

-   Questions of whether a Texas attorney may jointly represent family members and later actively work to harm one family member in aid of another member.

-   The value of shares of Trof, Inc., a private, family owned entity that owns an extensive amount of shares of another privately owned set of entities.

-   A web of over 30 various entities, ranging from charitable foundations to corporations, trusts, and more, all of which maintain their operations and

---

[72] 28 U.S.C.A. § 1367.
[73] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); see also *Oliver v. Lewis*, 891 F. Supp. 2d 839, 843 (S.D. Tex. 2012).
[74] *Sutter v. Wells Fargo Bank, N.A.*, 4:15-CV-342, 2015 WL 4915669, at *1 (E.D. Tex. Aug. 14, 2015).
[75] *Oliver v. Lewis*, 891 F. Supp. 2d 839, 847 (S.D. Tex. 2012).

nearly all employees in Texas. The state trial court described the entities as having an "unbelievably byzantine structure that is embedded here…"[76]

- Discovery that is already reaching into the millions of documents range.

- Questions related to ownership of electronic data that the trial court described as presenting "near infinite complexity."

53.     This case involves a years-long dispute regarding control of the Marshall Family Entities and a wrongful attempt to remove Preston from positions of control and influence regarding the Marshall Family Entities. This case presents a wide range of difficult and intricately related issues, all of which arise under Texas state law. This factor weighs heavily in favor of remand.

### 2.     State Law Predominates Over the One Federal Claim

54.     Of the eighteen causes of action in Plaintiffs' petition, all but one are based on Texas state law. In fact, even the one federal claim has a state law analog that was pending in the case for months before removal. This statutory factor also weighs heavily in favor of remand.

55.     Additionally, if the Court grants Plaintiffs leave to amend, there will be no federal causes of action remaining over which the Court had original jurisdiction. As Judge Rosenthal stated, when only state law claims remain, the second and third factors of 28 U.S.C.A. 1367 heavily favor remand.[77] "Resolution of Plaintiffs' state law claims depends on determination of state law. State courts, not federal courts, should be the final arbiters of state law."[78]

### 3.     Dismissal of the Claim(s) Granting Original Jurisdiction.

56.     In *Enochs v. Lampass County*, the Fifth Circuit addressed whether a district court abused its discretion in failing to remand a case to Texas state court after permitting the plaintiff to delete all federal claims after removal and only Texas state law claims remained.[79] The Fifth

---

[76] **Ex. 44**.
[77] *Oliver*, 891 F. Supp. 2d at 849.
[78]  *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).
[79] *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 157 (5th Cir. 2011).

Circuit held it was an abuse of discretion ***not*** to remand.[80] The Court stated that "The courts in this circuit must remain diligent in following the Supreme Court's almost fifty-year-old command that federal courts avoid needless decisions of state law."[81] In fact, the "the 'general rule' is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are eliminated from a case before trial."[82] Citing § 1367, at least one court has held that "the dismissal of Plaintiffs' federal claims deprives the Court of supplementary jurisdiction over Plaintiff's remaining state and local law claims."[83]

### 4. Exceptional or Compelling Reasons for Remand.

57. In *Enochs*, the Fifth Circuit held that the balance of the other factors weighed so heavily in favor of remand, that it created a compelling reason to remand.[84] Additionally, this case was removed by Defendants who are transparently attempting to avoid an impending trial date which they recently failed to get continued. Judge Miller acknowledged Defendants' delay tactics, stating "[w]e have had three mandamuses and a Special Appearance and every single one of them with a stay request. So believe me I know who has been trying to delay the process. I recognize that."[85] The trial court ordered the parties to continue moving forward with their preparations.[86] Instead of preparing for trial, Defendants removed this case to federal court. This is a major reason why this Motion for Remand is expedited. After more than a year of intense litigation, with less than 60 days before trial, Defendants removed and would greatly delay trial.

58. Three additional compelling factors favor remand. First, Defendants are attempting to negate and/or avoid unfavorable orders from the state district court and appellate

---

[80] *Id.*
[81] *Enochs*, 641 F.3d at 163.
[82] *Oliver*, 891 F. Supp. 2d at 849; see also *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir.2009).
[83] *Milione v. City Univ. of New York*, 950 F. Supp. 2d 704, 713–14 (S.D.N.Y. 2013), *aff'd*, 567 Fed. Appx. 38 (2d Cir. 2014).
[84] *Enochs*, 641 F.3d at 159.
[85] **Ex. 45** at pp. 20-22.
[86] *Id.*

courts. One must remember, the removing defendant, MarOpCo, lost all three mandamus petitions and all three accompanying motions for stay.[87] The Hunter Parties also lost their Special Appearances and were unsuccessful in staying discovery as to all parties.[88] The state courts have spent an extraordinary amount of time and judicial resources preparing and pushing this dispute to trial. Defendants have not profited from such close judicial scrutiny. Defendants are attempting to avoid the state judiciary.

59.     Second, this dispute involves issues of state law regarding the fiduciary duties attorneys owe their clients and the limits of the attorney-client privilege in Texas. Third, this dispute features multiple entities that operate inside Texas, but are attempting to avoid personal jurisdiction. These are very important state law questions that state law judges should decide. Given these compelling reasons, this factor weighs in favor of remand.

### 5.     Judicial Economy Heavily Favors Remand.

60.     The judicial economy inquiry focuses primarily on the resources the federal judiciary has expended up to the point of remand.[89] Judicial economy favors remand when "at the time the federal claims were deleted hardly any federal judicial resources, let alone a significant amount of resources, had been devoted to the district court's consideration of the Texas state-law claims (or to any claims)."[90] Such is the case here. At this point in the dispute, this Court has not dealt with any issues other than the removal, amendment, and remand.

61.     On the other hand, and as discussed *supra*, the Texas state courts, both district and appellate, have expended considerable time and resources in this dispute.

---

[87] **Exs. 29, 30, and 31**.
[88] The state appellate court agreed to stay discovery to and from the Hunter parties during the pendency of its interlocutory appeal, but refused to stay other discovery.
[89] *Oliver*, 891 F. Supp. 2d at 849.
[90] *Enochs*, 641 F.3d at 159.

### 6.    Fairness.

62.    The vast majority of this case involves state law claims. It is "certainly fair to have had the purely state law claims heard in Texas state court…"[91] There is nothing prejudicial about remand. Prejudice would result from failure to remand. Texas and Plaintiffs have devoted significant time preparing this dispute, and it is near trial. The parties have prepared their cases in state court for over a year. MarOpCo brought a counterclaim based on the exact statute they later used for removal.[92] That cause of action, violation of the CFAA, has been present in MarOpCo's counterclaims since November 2, 2015. Plaintiffs merely included a mirror-image claim in their Sixth Amended Petition. All parties litigated that counterclaim in state court for nearly a year before removal. Forcing Plaintiffs to forego all such work would result in prejudice for which Plaintiffs lack an adequate remedy.

63.    Defendants may claim prejudice based upon the fact that a trial date is approaching in state court. The fact that a trial will take place is not prejudicial for purposes of remand. If there is a specific issue Defendants believe will prejudice them, the state courts are competent to hear and rule on that issue. Again, this factor favors remand.

### 7.    Convenience.

64.    Remand is convenient for all of the same factors that make remand judicially economical and fair. Given the amount of state law briefing, motions, and hearings,[93] it would be extremely inconvenient, for the parties and all courts, to restart as a federal case.

### 8.    Comity.

65.    Comity weighs in favor of remand. "[C]omity demands that the important interests of federalism and comity be respected by federal courts, which are courts of limited

---

[91] *Enochs*, 641 F.3d at 160.
[92] **Ex. 20**.
[93] **Ex. 25**.

jurisdiction and not as well equipped for determinations of state law as are state courts."[94] This case involves numerous issues of contested state law related to the interpretation of statutes and common law as well as applying those interpretations to the facts. These are overwhelmingly state issues. Defendants are attempting to evade a state court trial through this removal. In the interests of comity and federalism, the Court should remand this case to state court.

**9.    Forum Shopping.**

66.    The Court must consider whether the parties are engaged in forum shopping. In *Enoch*, the court found that "[t]he motion to amend his complaint to delete the federal claims is not a particularly egregious form of forum manipulation, if it is manipulation at all."[95] The Court also found that "the Supreme Court's instruction for district courts to 'guard against forum manipulation' is explicitly qualified for situations such as this one, where other considerations weigh heavily in favor of remand."[96]

## V.    CONCLUSION

67.    The Court should remand in the interests of comity, judicial economy, fairness, convenience, and all factors listed in 28 U.S.C.A. § 1367.

## VI.    PRAYER

For these reasons, Plaintiffs respectfully request the Court remand this case.

Dated September 16, 2016.

---

[94] *Enochs*, 641 F.3d at 160.
[95] *Id.*
[96] *Id.*

Respectfully submitted,

**DOBROWSKI, LARKIN & JOHNSON LLP**

By:   */s/ Paul J. Dobrowski*
       Paul J. Dobrowski (Attorney-in-Charge)
       (SBN 05927100; SDN 3208)
       pjd@doblaw.com
       C. Davis Bradford (Of Counsel)
       (SBN 24064939; SDN 4602552)
       dbradford@doblaw.com
       Akilah F. Craig (Of Counsel)
       (SBN 24076194; SDN 2590968)
       acraig@doblaw.com
       4601 Washington Ave., Suite 300
       Houston, TX 77007
       Telephone: (713) 659-2900
       Facsimile: (713) 659-2908

**CHAMBERS LAW FIRM**

By:   */s/ Jeffrey W. Chambers*
       Jeffrey W. Chambers (Of Counsel)
       (SBN 04075000; SDN 11297)
       jeffchambers@chambers-law-group.com
       2929 Allen Parkway, Suite 200
       Houston, TX 77019
       Telephone: (713) 522-4529
       Facsimile: (713) 583-9684

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

I hereby certify that after both telephone and electronic communications between counsel, counsel for Defendants are opposed to this Motion for Remand.

*/s/ Akilah F. Craig*
Akilah F. Craig

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiffs' Expedited Motion for Remand has been served on all counsel of record on this the 16th day of September, 2016, by electronic services, United States first class mail and/or hand delivery, pursuant to the FRCP.

*/s/ Paul J. Dobrowski*
Paul J. Dobrowski