UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PRESTON MARSHALL, ET AL.,    )
        )
      Plaintiffs,    )
        )      CIVIL ACTION NO.
VS.        )
        )      3:16-CV-3236-G
MAROPCO, INC., ET AL.,    )
        )
      Defendants.    )

## MEMORANDUM OPINION AND ORDER

Before the court are the plaintiffs' motions (1) for leave to file an amended

complaint (docket entry 9) and (2) to remand the case to the state court from which

it was previously removed (docket entry 8).  For the reasons stated below, the

motions are granted.

## I.  BACKGROUND

The plaintiffs commenced this action in the 11th Judicial District Court of

Harris County, Texas on June 22, 2015, asserting various claims under Texas law

relating to Preston Marshall ("Marshall")'s employment with the defendant,

MAROPCO, Inc. ("MarOpCo").  Defendants' Notice of Removal ("Notice") (docket

entry 1).  On August 12, 2016, the plaintiffs filed a sixth amended petition, which added a federal claim under the Computer Fraud and Abuse Act ("CFAA").[1]  Notice at 2, Appendix at 1752, Plaintiffs' Sixth Amended Petition ("Amended Petition") at 39-40 (docket entry 1-4).  On September 9, 2016, the defendants removed the case to federal court in the Southern District of Texas on the basis of federal question jurisdiction for the CFAA claim and supplemental jurisdiction for the state law claims.  Notice at 3-4.  On November 17, 2016, the case was transferred to the Northern District of Texas and assigned to this court.  *See* Order to Transfer Case (docket entry 50).

Prior to the transfer, the plaintiffs filed the instant motions for leave to amend their complaint and omit the federal claim and to remand the case to state court.  Plaintiffs' Motion for Leave to File an Amended Complaint ("Motion to Amend") (docket entry 9); Plaintiffs' Motion to Remand ("Motion to Remand") (docket entry 8).  The motions are now ripe for decivion.

---

[1]     Plaintiffs' sixth amended petition also includes the following state law claims:  wrongful discharge, breach of contract, tortious interference with existing contracts, tortious interference with business relationships and fiduciary duties, violation of privacy rights, conversion, trespass to chattel, violation of the Texas Harmful Access by Computer Act, misappropriation of trade secrets under the Texas Uniform Trade Secrets Act, breach of fiduciary duty, knowing participation in breach of fiduciary duty, fraud, fraudulent inducement, fraudulent concealment, fraud in a stock transaction, conspiracy, defamation, and request for temporary and permanent injunction.  Amended Petition at 33-54.

## II. ANALYSIS

### A. Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings. Under Rule 15(a)(2), leave to amend should be "freely given when justice so requires." This and the other federal rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). This issue was before the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), where the Court explained:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. . . . In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'

*Id.* at 182.

In *Dussouy v. Gulf Coast Investment Corporation*, 660 F.2d 594 (5th Cir. 1981), the Court of Appeals held:

> 'Discretion' may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so requires'. It evinces a bias in favor of granting leave to amend. The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to

> prevent litigation from becoming a technical exercise in the
> fine points of pleading.

*Id.* at 597-98.

Since *Dussouy*, the Fifth Circuit has repeatedly held that Rule 15(a) evinces a

liberal amendment policy.  See, *e.g.*, *Lowrey v. Texas A & M University System*, 117 F.3d

242, 245 (5th Cir. 1997) ("Rule 15(a) expresses a strong presumption in favor of

liberal pleading"); *Nance v. Gulf Oil Corporation*, 817 F.2d 1176, 1180 (5th Cir. 1987)

("Federal Rule 15(a) counsels a liberal amendment policy"); *Youmans v. Simon*, 791

F.2d 341, 348 (5th Cir. 1986) ("The policy underlying Rule 15(a) is one in favor of

liberal amendment."); *Foster v. Daon Corporation*, 713 F.2d 148, 152 (5th Cir. 1983)

(the purpose of Rule 15(a) "is to assist the disposition of the case on its merits, and

to prevent pleadings from becoming ends in themselves"); *Chitimacha Tribe of*

*Louisiana v. Harry L. Laws Company, Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982)

(district courts should err on the side of allowing amendments), *cert. denied*, 464 U.S.

814 (1983).  A motion to amend, therefore, should not be denied unless there is a

substantial reason to do so.  *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998)

(citing *Lefall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir. 1994)).

Here, the plaintiffs contend that the court should grant leave to amend

because the defendants will not be prejudiced, the amendment is not done in bad

faith, and the amendment will not cause undue delay.  *See* Motion to Amend at 1-10.

The defendants contend that the plaintiffs' amendment is sought in bad faith because

it amounts to forum manipulation, and that it will cause undue delay. *See* Defendants' Response in Opposition to Plaintiffs' Motion for Leave to File an Amended Complaint ("Response to Motion to Amend") at 4-11 (docket entry 21). Accordingly, the court will address the Rule 15 factors below.

### 1. *Whether the Plaintiffs' Amendment Will Cause Undue Delay*

The plaintiffs contend that this amendment will not delay the case because they filed the instant motion within six days of the removal of the lawsuit to federal court. Motion to Amend at 7. The plaintiffs further contend that the defendants have repeatedly delayed this action by filing multiple unsuccessful mandamus actions. *Id.* The defendants maintain that the plaintiffs were responsible for any delay by amending their petition and adding the CFAA claim. Response to Motion to Amend at 8. The defendants also urge that the removal does not constitute a delay because it was their right to do so. *Id.* Moreover, the defendants aver that this case was not ready for a November 2016 trial and it would be continued as a result of the state court judge's retirement. *Id.*

Here, the court finds that allowing the plaintiffs to amend their complaint will not result in undue delay. The plaintiffs promptly moved for leave to amend their complaint. *Dueling v. Devon Energy Corporation*, 623 Fed. App'x 127, 131 (5th Cir. 2015) (looking to whether the plaintiffs moved promptly to amend their complaint). Moreover, it appears that the defendants have caused repeated delays in the state

court by filing multiple unsuccessful mandamus petitions and five unsuccessful attempts to stay the litigation. *See* Motion to Amend at 7, Exhibits 4-6. The same day that the plaintiffs amended their petition to add the CFAA claim on August 12, 2016, the defendants sought a three month continuance of the trial setting. *Id.*, Exhibit 17. The trial court denied the defendants' motion on August 22, 2016. *Id.*, Exhibit 10 at 20-22. Then, the defendants waited over two weeks, until September 9, 2016, to remove the case. *See* Notice. The court also notes that the defendants waited an additional two weeks after the case was removed to file a motion to transfer. *See* Defendants' Motion to Transfer (docket entry 14). The actions of the defendants -- not the plaintiffs -- have delayed the case for several months through various procedural maneuvers. Accordingly, this factor weighs heavily in favor of allowing amendment.

### 2. *Whether the Plaintiffs' Amendment Prejudices the Defendants*

The defendants insist that they are prejudiced because the plaintiffs' "stated purpose of the amendment is to deny Defendants a federal forum for Plaintiffs' lawsuit." Response to Motion to Amend at 6. Furthermore, the defendants argue that this amendment will prevent them from pursuing their CFAA counterclaim in a federal forum. *Id.* Here, the court finds that the defendants would not be prejudiced by the plaintiffs' amendment. First, there will be one less claim for the defendants to defend against. Moreover, there is no indication that the defendants have expended

- 6 -

significant resources defending the CFAA claim.  There have been no substantive

motions involving the CFAA claim -- all motions up to this point have been

procedural.  As to their counterclaim, the defendants will be able to pursue it in state

court just as they had done prior to removal.  Accordingly, the defendants will not

suffer prejudice and this factor favors allowing amendment.

### 3.  *Bad Faith:  Forum Manipulation*

The defendants contend that the plaintiffs are attempting to engage in forum

manipulation by seeking leave to amend their complaint.  First, contrary to the

plaintiffs' assertion, the court may consider forum manipulation under the "bad

faith" prong of Rule 15.  *Bouie v. Equistar Chemicals LP*, 188 Fed. App'x 233, 238-39

(5th Cir. 2006) (considering whether the plaintiff acted in bad faith by engaging in

forum shopping).[2]  The Supreme Court has instructed district courts to "guard

against forum manipulation" by taking such behavior into account.  *Carnegie-Mellon*

*University v. Cohill*, 484 U.S. 343, 357 (1988).

The Fifth Circuit has set a high bar for proving improper forum manipulation.

For example, the Fifth Circuit deemed that a party had not engaged in improper

forum manipulation even when "[the party's] obvious objective was to change the

---

[2]    It is true that the Fifth Circuit usually discusses forum manipulation in
the context of motions to remand rather than motions for leave to amend.  See, *e.g.*,
*Bentley v. Tarrant County Water*, No. 94-41044, 1995 WL 534726, *2 (5th Cir. Jul.
25, 1995).  However, because the parties have extensively briefed the issue for this
motion, the court discusses it here.

forum by getting back into state court." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 340 (5th Cir. 1999). Courts within the Fifth Circuit are split on whether an amendment to a complaint is a clear instance of forum manipulation. Compare *Hamburger v. Mobil Oil Corporation*, No. CIV. A. 96-505, 1996 WL 180060, at *1 (E.D. La. Apr. 16, 1996) ("The Court finds that plaintiff's efforts to delete all federal claims appear to be an attempt to manipulate the forum."), *aff'd*, 117 F.3d 1417 (5th Cir. 1997), with *Brewster v. Nationstar Mortgage, LLC*, No. 3:13-CV-2807-M (BF), 2013 WL 6501261, at *8 (N.D. Tex. Dec. 10, 2013) (Stickney, M.J.) ("However, the Fifth Circuit has found that the act of amending a complaint to eliminate a federal claim is not an egregious form of forum manipulation, if it is even manipulation at all.").

Here, the court finds that the plaintiffs have engaged in forum manipulation. The plaintiffs added the CFAA claim on August 12, 2016; barely more than a month later, however, on September 16, 2016, they sought to delete the CFAA claim via the instant motion. The plaintiffs should not have added a federal claim if they did not want to prosecute it. Additionally, the plaintiffs imply that they seek to avoid federal jurisdiction by stating "[p]laintiffs . . . may avoid federal jurisdiction by restricting the scope of the relief sought exclusively to state law." Motion to Amend at 6. Thus, the plaintiffs appear to have engaged in forum manipulation. See *Medel v. Travis County Juvenile Probation Department*, No. A-10-CA-771 LY, 2011 WL 672310, at *3

(W.D. Tex. Feb. 14, 2011) ("Plaintiff has failed to provide the Court with any reason to support her request to drop all of her federal claims from her Petition other than merely to defeat this court's federal question jurisdiction.").

However, it is not a particularly egregious form of forum manipulation.  See *Enochs v. Lampasas County*, 641 F.3d 155, 160 (5th Cir. 2011) (noting that the plaintiff's "motion to amend his complaint to delete the federal claims is not a particularly egregious form of forum manipulation, if it is manipulation, at all"). Moreover, the weight of authority shows that forum manipulation is just one factor to be considered and is far from determinative.  *Id.* at 161 (holding that guarding against forum manipulation "is not so serious of a concern that it can become a trump card which overrides all of the other factors [the court is] instructed to consider and balance"); *Hicks v. Austin Independent School District*, 564 Fed. App'x 747, 749 (5th Cir. 2014) ("Forum manipulation is only one of the important considerations that the district court must take into account and balance in making its remand decision."); *Brewster*, 2013 WL 6501261, at *8 ("[F]orum manipulation is only one factor to be considered by the court and cannot override all of the other factors the court is to consider.").

The defendants maintain that *Enochs* is inapposite for primarily two reasons: (1) the motion for leave to amend was unopposed and (2) *Enochs* involved novel state

law claims, whereas the instant case does not.[3]  Response to Motion to Amend at 9.

However, the fact that the motion for leave to amend was unopposed was not

material to the *Enochs* court's analysis.  See *Enochs*, 641 F.3d at 160.  As to the second

contention, the Fifth Circuit in *Enochs* clearly instructs district courts to guard against

forum manipulation by considering it in conjunction with other relevant factors.  *Id.*

It is true that the dominant factor in *Enochs* was the novelty of the state law issues.

*Id.*  However, *Enochs* certainly does not stand for the proposition that novel state law

issues are the only factor that can counterbalance forum manipulation.  Rather,

consistent with *Enochs*, the court may weigh other factors, including prejudice and

undue delay, to determine if those outweigh the plaintiffs' forum manipulation.[4]

---

[3]       As the defendants point out, the two cases cited by the plaintiffs from the district of Maryland are not binding precedent for this court.  Response to Motion to Amend at 5 n.5.  The plaintiffs cite *Joyner v. A.C. & R. Insulation Co.*, No. CIV. CCB-12-2294, 2013 WL 2460537 (D. Md. June 6, 2013), *aff'd sub nom. Wood v. Crane Co.*, 764 F.3d 316 (4th Cir. 2014), and *Shilling v. Northwestern Mutual Life Insurance Company*, 423 F. Supp. 2d 513, 518 (D. Md. 2006).  Motion at 6 nn.22-23.  However, in this court's view, neither *Joyner* nor *Schilling* is inconsistent with *Enochs*.  For example, the court in *Joyner* uses almost identical language to the court in *Enochs*, explaining that form manipulation is "only one factor in the supplemental jurisdiction calculus."  *Joyner*, 2013 WL 2460537, at *5 n.3.

[4]       The defendants also attempt to distinguish the following cases from the instant action:  *Watson v. City of Allen, Texas*, 821 F.3d 634, 642-43 (5th Cir. 2016), *Giles*, 172 F.3d at 338-39, and *Oliver v. Lewis*, 891 F. Supp. 2d 839, 848-49 (S.D. Tex. 2012).  Response to Motion to Amend at 9-11.  However, these decisions are not inconsistent with *Enochs*, and simply stand for the proposition that forum manipulation is a factor to be considered.  These cases do not support the defendants' implication that forum manipulation is the deciding factor.  The defendants also cite *Evans v. Kawaski Motors Corp., USA*, No. CIV.A. H-15-659, 2015

(continued...)

Additionally, the defendants contend that the plaintiffs are acting in bad faith because there is a forum selection clause in Marshall's employment agreement which requires that any litigation be brought in federal court in Dallas, Texas.  Response to Motion to Amend at 7.  It is true that "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."  *Id.* (quoting *Atlanta Marine Construction Company, Inc. v. United States District Court for Western District of Texas*, __U.S. __, 134 S. Ct. 568, 581 (2013)).  However, the defendants cite no authority for the proposition that the existence of a forum selection clause dictates whether the plaintiffs may amend their complaint.

In sum, the plaintiffs have not engaged in forum manipulation so egregious as to tilt the balance toward denial of the instant motion.  The defendants will not be prejudiced or face undue delay -- both of these factors strongly favor granting leave to amend.  Weighing the above factors in conjunction with the Fifth Circuit's liberal amendment policy leads the court to conclude that the plaintiffs should be permitted to amend their complaint.  Thus, the plaintiffs' motion for leave to amend is granted.

---

[4](...continued)
WL 4434073, at *3 (S.D. Tex. July 17, 2015).  Response to Motion to Amend at 11. However, *Evans* involves fraudulent joinder and not the sort of forum manipulation at issue here. *Evans*, 2015 WL 4434073, at *8.

B.  Motion to Remand

28 U.S.C. § 1441(a) permits the removal of "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  The statute allows a defendant to "remove a state court action to federal court only if the action could have originally been filed in federal court."  *Anderson v. American Airlines, Inc.*, 2 F.3d 590, 593 (5th Cir. 1993).  However, the removal statute must be strictly construed because "removal jurisdiction raises significant federalism concerns."  *Willy v. Coastal Corporation*, 855 F.2d 1160, 1164 (5th Cir. 1988); see also *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).  Therefore, "any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court."  *Cross v. Bankers Multiple Line Insurance Company*, 810 F. Supp. 748, 750 (N.D. Tex. 1992) (Means, J.); see also *Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100, 108-09 (1941).  The party seeking removal bears the burden of establishing federal jurisdiction.  *Willy*, 855 F.2d at 1164.

There are two principal bases upon which a district court may exercise removal jurisdiction: the existence of a federal question, *see* 28 U.S.C. § 1331, and complete diversity of citizenship among the parties.  *See* 28 U.S.C. § 1332.  Here, the defendants removed this case on the basis of federal question jurisdiction.  Notice at 3-5.  However, as discussed above, the court granted the plaintiffs' motion to amend

their complaint and delete the federal claim.  In the instant motion, the plaintiffs

request that the court decline to exercise supplemental jurisdiction over the

remaining state law claims and remand the case to state court.  *See* Motion to

Remand.

Federal court jurisdiction exists over an entire action, including state law

claims, when the federal and state law claims "'derive from a common nucleus of

operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try

them all in one judicial proceeding.'"  *Carnegie-Mellon*, 484 U.S. at 349 (quoting

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)).  Yet

supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right."  *Gibbs*,

383 U.S. at 726.  Consequently, "a federal court should consider and weigh in each

case, and at every stage of the litigation, the values of judicial economy, convenience,

fairness, and comity in order to decide whether to exercise jurisdiction over a case

brought in that court involving pendent state-law claims."  *Carnegie-Mellon*, 484 U.S.

at 350.

When the federal claims are dismissed before trial and only a state law claim

remains, the balance of factors to be considered under the supplemental jurisdiction

doctrine weigh heavily in favor of declining jurisdiction; therefore, the federal court

should usually decline the exercise of jurisdiction over the remaining claims and

remand the case to state court.  *Id.* at n.7.  According to the Fifth Circuit, "[o]ur

general rule is to dismiss state claims when the federal claims to which they are

pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d

580, 585 (5th Cir. 1992) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir.

1989)).  The Fifth Circuit has noted that the district court has "wide discretion" to

remand remaining state law claims.  *Robertson v. Neuromedical Center*, 161 F.3d 292,

296 (5th Cir. 1998) ("We will therefore reverse a district court's decision to remand

pendent state law claims after dismissing all remaining federal claims only upon a

finding of abuse of this 'wide' discretion."), *cert. denied*, 526 U.S. 1098 (1999).

### 1. *Whether the Plaintiffs Waived Their Right*
### *to File a Motion to Remand*

The defendants contend that the plaintiffs have waived any right to file a

motion to remand by agreeing to a forum selection clause.[5]  Defendants' Response to

the Plaintiffs' Motion to Remand ("Remand Response") at 7 (docket entry 23).  The

defendants cite *City of New Orleans v. Municipal Administrative Services, Inc.*, 376 F.3d

501, 504 (5th Cir. 2004), *cert. denied*, 543 U.S. 1187 (2005), to support their

---

[5]      The clause states:  "In the event litigation is necessary, such legal action
shall be commenced only in a federal court located in Dallas, Texas or if federal court
shall not have jurisdiction for whatever reason then in a state district court located in
Dallas, Texas.  Any litigation commenced other than in a federal court located in
Dallas, Texas shall be subject to being dismissed, stayed or having venue transferred
to a federal court located in Dallas, Texas at the option of the party not commencing
said litigation.  . . . [Marshall] waive[s] all objections and defenses to litigation being
conducted in a federal court located in Dallas, Texas based upon venue or under the
doctrine of *forum non conveniens*."  Motion to Amend, Exhibit 4.

- 14 -

argument.  *Id.*  They correctly note that *City of New Orleans* involves the waiver of the defendants' right to removal -- the "converse waiver."  *Id.*  However, there is a significant distinction between this case and *City of New Orleans*.  Here, the district court is exercising its discretion under section 1367(c) to determine whether it should remand the case.  The court's exercise of its discretion here does not depend on whether the plaintiffs waived their right to file the instant motion.  Thus, the court may determine whether to exercise supplemental jurisdiction over the remaining state law claims.

> 2.  *Whether the Plaintiffs' State Law Claims and CFAA Claim*
> *Arose from a Common Nucleus of Operative Facts*

Title 28, Section 1367(a) of the United States Code grants district courts "supplemental jurisdiction" over claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . ."  28 U.S.C. § 1367(a).  These claims, however, "must derive from a common nucleus of operative fact" such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding."  *Gibbs*, 383 U.S. at 725.

Here, the plaintiffs' claims relate to Marshall's employment with MAROPCO, the termination of that employment, and the defendants' post-termination possession, access, and use of Marshall's computer equipment and data.  Remand Response at 9-14; *see generally* Amended Petition.  The facts giving rise to all of the plaintiffs' claims constitute actions taken by the defendants prior to and after the

termination of Marshall.  See *Bella v. Davis*, 531 Fed. App'x 457, 459 (5th Cir. 2013) ("Since Appellants' claims all focus on the circumstances leading up to and following the fight, the claims arise from a common nucleus of operative fact.").  All of the plaintiffs' claims center around Marshall's termination.  Therefore, the court finds that the plaintiffs' CFAA claim and state law claims arise from a common nucleus of operative fact.

### 3.  *Whether the Court Should Exercise Its Discretion to Hear the Remaining State Law Claims under Section 1367(c)*

In determining whether to exercise supplemental jurisdiction over remaining state law claims, the court considers the common law factors of judicial economy, convenience, fairness, and comity, as well as the statutory factors set forth in 28 U.S.C. § 1367(c), including whether (1) the claims raise novel or complex issues of state law; (2) the claims substantially predominate over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  *Brookshire Brothers Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir.), *cert. denied*, 557 U.S. 936 (2009).  No single factor is dispositive.  *Id.*

### a.  Common Law Factors

Judicial economy favors remand when "at the time the federal claims were deleted hardly any federal judicial resources, let alone a significant amount of

resources, had been devoted to the district court's consideration of the Texas state-law claims (or to any claims)." *Enochs*, 641 F.3d at 159.  If the federal claim is deleted early on in the case, judicial economy almost always favors remand.  See *Mendoza v. United States*, 481 F. Supp. 2d 643, 648 (W.D. Tex. 2006) ("If all jurisdiction-conferring claims are dismissed at an early stage of the proceedings, dismissal of state claims is almost always preferred."), *aff'd sub nom.*, *Mendoza v. Murphy*, 532 F.3d 342 (5th Cir. 2008).

Here, this case's short history in federal court favors remand.  Moreover, the instant motions were filed within one week of the case's removal to this court.  Cf. *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (holding that a district court abused its discretion by remanding the case when "[t]he case had been pending in the district court for almost three years"), *cert. denied*, 528 U.S. 1067 (2000).  Up to now, the federal court system has only handled procedural motions:  transfer of venue, leave to amend, and remand.  No substantive issues have been decided and this court has had no occasion to become familiar with the merits of this case.  *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (determining whether the trial court had "substantial familiarity with the merits of the case").  Texas courts, on the other hand, have spent a substantial amount of time on this dispute.

Moreover, given that there are eighteen state law claims, considerations of fairness and comity favor remand.  See *Enochs*, 641 F.3d at 160 (noting that "[I]t was

certainly fair to have had the purely Texas state law claims heard in Texas state court" and that the state courts are better equipped for state law determinations); *Santiago v. Novastar Mortgage, Inc.*, No. 4:11-CV-769, 2012 WL 3309360, at *3 (E.D. Tex. July 23, 2012), *report and recommendation adopted*, No. 4:11-CV-769, 2012 WL 3307545 (E.D. Tex. Aug. 13, 2012).

### b.  Statutory Factors

Section 1367(c)'s statutory factors favor remand as well.  The plaintiffs argue that this case involves complex questions of corporate hierarchies and tax structures, novel questions of who owns corporate and personal electronic data (which the trial court described as "near infinite complexity") when shared among family members, the extent to which Texas has jurisdiction over entities conducting operations in Texas, and ethical constraints on attorneys jointly representing family members.  Motion to Remand at 14-15.  The defendants contend that the plaintiffs' claims are not complex because Texas statutes clearly state each claim's elements and each claim has been extensively opined on.  Response to Remand at 15-16.

Here, given the voluminous exhibits, and the extensive state court docket, involving multiple hearings and nearly thirty-five pages of docket entries, this case is clearly complex.  *See* Motion to Remand at 7.  The defendants' contention that the case is factually -- but not legally -- complex is without merit.  *See* Response to Remand at 15-16.  The complexity of the facts in this case will certainly increase the

- 18 -

difficulty of applying those facts to the law.  Moreover, the defendants have

previously admitted that this case involves unsettled questions of state law by stating,

"[t]his case presents the question, which no Texas court has yet confronted."

Plaintiffs' Reply to Motion to Remand ("Remand Reply") at 2-3 (quoting from the

defendants' brief in one of the mandamus petitions in this case) (docket entry 28).

Therefore, this case raises "at least some" novel issues of state law.  *Santiago*, 2012

WL 3309360, at *2 ("The briefing on the motions to dismiss appears to raise at least

some novel issues of state law under the Texas Constitution and home equity

loans.").  Moreover, "a Texas state-law claim is novel when it lacks guidance from the

Supreme Court of Texas."  *Inge v. Walker*, 3:16-CV-0042-B, 2016 WL 4920288, at *6

(N.D. Tex. Sept. 15, 2016) (Boyle, J.).  However, the defendants have failed to direct

the court to a single Texas Supreme Court opinion that resolves the legal issues

presented here.  In sum, there should be no question that this factor favors remand.

  Even if such a question arises, the second factor strongly favors remand.  See

*Welch v. Jannereth*, 496 Fed. App'x 411, 413 (5th Cir. 2012) ("The parties disagree

about the first factor, namely, whether Welch's state-law claims raise novel or

complex issues.  Their novelty is unimportant due to the second factor.").  A court

may "decline to exercise supplemental jurisdiction . . . if . . . the [state] claim

substantially predominates over the [federal] claim. . . ."  28 U.S.C. § 1367(c)(2);

*U.S. Bank, N.A. v. City of Irving*, 3:06-CV-1805-G, 2007 WL 1073769, at *4 (N.D.

Tex. April 5, 2007) (Fish, C.J.). "If it appears that state issues substantially predominate, whether in terms of proof, of scope of issues raised, or of comprehensiveness of remedy sought, the state claims may be dismissed." *Gibbs*, 383 U.S. at 726. "[T]he process of determining whether state law claims 'substantially predominate' over their federal counterparts is far from an exact science." *Inge*, 2016 WL 4920288, at *6. Courts have looked to the number of federal claims versus the number of state law claims and compared the total amount of damages asserted for each. *Id.* (citing *Lawler v. Miratek Corp.*, No. EP-09-CV-252-KC, 2010 WL 743925, at *6 (W.D. Tex. Mar. 2, 2010)).

First, the plaintiffs' state law claims inherently predominate because the plaintiffs are no longer prosecuting a federal claim. *Kokes v. Angelina College*, 220 F. Supp. 2d 661, 668 (E.D. Tex. 2002) ("Because the court has dismissed all of the plaintiff's federal claims before trial and because, as such, the state claims predominate in this case."); *Welch*, 496 Fed. App'x at 413 ("Because the federal claims were insubstantial . . . the federal claims could not predominate in a substantial way over the state issues no matter how settled the state law might be.").

The defendants correctly contend that courts should not split cases containing nearly identical claims. See *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 104 (5th Cir. 1996) (holding that state law claims remanded back to state court must be "separate and independent" from the federal question claims). However, courts may

generally "split claims arising from the same nucleus of operative fact" so long as they are not too closely connected.  *Lawler*, 2010 WL 743925 at *7 ("[T]he Court should not split apart claims that are too closely interconnected when remanding part of a case to state court.").  Here, as discussed above, the plaintiffs' CFAA claim and state law claims plausibly arise under a common nucleus of operative facts.  However, the claims are not so closely intertwined as to violate the *Blue Bell* standard.  Moreover, unlike the authority cited by the defendants, the court is not splitting apart a single action that contains state and federal claims.  There issue here is whether the court should remand the remaining state law claims.  Therefore, the defendants' argument fails.

Third, the number of claims and the amount of damages favors remand.  The plaintiffs have asserted eighteen state law claims.  See *Inge*, 2016 WL 4920288, at *7 ("Inge offers far more theories of liability -- and brings many more counts -- on his state claims, as compared to his RICO claim.").  It is true that the plaintiffs do not request a specific amount of damages.  However, the plaintiffs contend that the defendants defrauded the plaintiffs out of as much as $487,000,000.  *See* Remand Reply at 2.  While this figure is not determinative by any means as to the amount of damages that the plaintiffs seek, it clearly indicates that the plaintiffs seek substantial damages for their state law claims.

Fourth, comparing the scope of the remedies between the CFAA claim and the state law claims demonstrates that the state law claims predominate.  The plaintiffs requested damages for investigative costs, consequential damages, and lost revenue for the CFAA claim.  Amended Petition ¶ 119.  However, not only do the plaintiffs seek actual damages for their state law claims, the plaintiffs also seek complex and fact-intensive remedies, including punitive damages, dividends from lost stock shares, a declaration from the court, and the actual return of the computer equipment in question.  *Id.* ¶¶ 106, 133.  There is no question that the remedies for the plaintiffs' state law claims will require substantially more judicial resources than for the plaintiffs' CFAA claim.  As such, the state law claims are far more expansive than the CFAA claim.  See *Wolinsky v. Oak Tree Imaging, LP*, 362 B.R. 770, 780 (S.D. Tex. 2007) ("These state-law claims raise myriad factual issues for the court's consideration and therefore far outweigh the federal claim in terms of the scope of the issues raised.") (internal quotation marks omitted).  Therefore, the second factor weighs in favor of remand.

As to the third factor, the federal claim is no longer in this case, as discussed above.  See *Riggins v. City of Indianola, Mississippi*, No. 4:14-CV-110-DMB-JMV, 2016 WL 4010812, at *13 (N.D. Miss. July 25, 2016) ("The third statutory factor weighs in favor of remand because the federal claim will be dismissed by this order.").  Lastly, the defendants have put forth no exceptional circumstances that would tip the

balance of factors in favor of retaining the state law claims.  Therefore, the relevant factors weigh in favor of declining to exercising supplemental jurisdiction over the remaining state law claims.

## III.  CONCLUSION

For the reasons stated above, the plaintiffs' motions are **GRANTED**.  This case is **REMANDED** to the **11th Judicial District Court of Harris County, Texas**. The clerk shall mail a certified copy of this order to the district clerk of Harris County, Texas.  28 U.S.C. § 1447(c).

**SO ORDERED**.

February 22, 2017.

**A. JOE FISH**
**Senior United States District Judge**

- 23 -